# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

IN RE:

                                                                   BK 06-71069-CMS-7

THOMAS DWAIN ARMENTROUT,

        Debtor.

                                                                  AP 06-70042-CMS

CHARLES WILSON,

         Plaintiff,

VS

FAYETTE SAND & GRAVEL, INC., and
THOMAS DWAIN ARMENTROUT,

        Defendant.

## MEMORANDUM OPINION

This matter came before the court on April 13, 2009, for trial on Charles Wilson's ("Plaintiff") objection to dischargeability of debts pursuant to 11 U.S.C. § 523(a)(6). (AP Doc. 1). Lee Wendell Loder appeared on behalf of the Plaintiff and Eric M. Wilson appeared on behalf of Thomas Dwain Armentrout ("Debtor"). After consideration of the evidence submitted at trial and the arguments of counsel this court **OVERRULES** the objection to dischargeability pursuant to 11 U.S.C. § 523(a)(6).

## JURISDICTION

The Bankruptcy Court has jurisdiction of Debtor's Chapter 7 case pursuant to 28 U.S.C. § 1334(a). This court has jurisdiction of this issue, a core bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference

1

of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

## FINDINGS OF FACT

Debtor is the sole owner of Fayette Sand and Gravel, Inc.("Fayette Sand"), an Alabama corporation which was incorporated in 1990 and continued as an active corporation at all times relevant to this dispute. (Plaintiff's Exhibit 12).[1]  Plaintiff was employed as a laborer at Fayette Sand from December 4, 2001 to February 20, 2004.  (Plaintiff's Exhibits 3 &15).  Plaintiff was laid off from Fayette Sand on February 20, 2004 due to a "lack of work" and "business [being] slow." (Plaintiff's Exhibit 15).   Shortly thereafter, on April 28, 2004, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  (Plaintiff's Exhibit 1).  The Charge of Discrimination alleged that Jerome Taylor, a supervisor at Fayette Sand, and/or James Crowell, also a supervisor at Fayette Sand:[2] (1) called Plaintiff over at a crawfish boil held at the Fayette Sand office suite, told Plaintiff to try on a rope tied like a small noose to see if it would fit Plaintiff's neck, and then told Plaintiff that he was going to hang Plaintiff with the rope; (2) told Plaintiff while driving to Berry, a small mining town in Alabama, that he never went to Berry "because there are just too many niggers;" (3) told the Plaintiff that the reason he did not like black people was because black people don't work and that "they get there [sic] money from the government to sell dope and buy cars and ride around in Cadillacs;" (4) intentionally dropped a backhoe on the Plaintiff's back causing the Plaintiff physical injury; and (5) called the Plaintiff a

---

[1]During this time, Fayette Sand employed between 16 and 25 employees, including the Plaintiff and the Debtor.

[2]Testimony indicates that James Crowell was Plaintiff's supervisor.  Jerome Taylor was also a supervisor, but he was not Plaintiff's supervisor.

Case 06-70042-CMS    Doc 79    Filed 01/05/10    Entered 01/05/10 14:49:18    Desc Main
Document      Page 2 of 27

nigger when the Plaintiff was building a storm shelter at the depot train station. (Plaintiff's Exhibit 1). Plaintiff asserted that the actions of the supervisors at Fayette Sand constituted a hostile and racially discriminatory work environment. Plaintiff also asserted that Debtor fostered the hostile and racially discriminatory work environment because: (1) the Debtor had an employment policy that resulted in a hostile work environment; (2) the Debtor failed to act after being consulted repeatedly about the hostile work environment; and (3) the Debtor ratified the conduct of the supervisors of Fayette Sand by firing Plaintiff in retaliation for raising claims of discrimination. At no point in the Charge of Discrimination does the Plaintiff allege that the Debtor actually participated in any of the alleged incidents. Debtor responded to the Charge of Discrimination on June 9, 2004. (Plaintiff's Exhibit 3). In his response, Debtor admitted that there was no written policy in place regarding race discrimination during Plaintiff's employment at Fayette Sand, but stated that a racially hostile work environment was not tolerated. Debtor further stated that the Plaintiff never came to him and complained about a racially hostile work environment, but that he was aware of the noose incident which occurred at the crawfish boil. The following is Debtor's account of the noose incident:

> Jerome Taylor who is a named respondent came up with a small noose from inside our ornamental concrete building where it had been hanging for 10-12 months as you come in the back door. The noose was made up by my yard foreman, Frankie Marchbanks, who is African American . . . . [Jerome Taylor] asked [Plaintiff] if he knew what the rope was. He said, "Sure I do give it to me", he took the rope and placed it around his head. It hardly fit because of its size, finally he squeezed it on then said "Hang me mother-f*****, you ain't got the balls." Jerome Taylor said "NO" that is not what I said. [Plaintiff] then put the rope in Mr. Taylor's hand, Jerome dropped it. They all continued joking about different things until time to go back to work at 2:00 p.m. [Plaintiff] had to be asked to remove [the] noose before going back to work.

(Plaintiff's Exhibit 3). Debtor also admits that Plaintiff was involved in an accident on a work site, but that the incident could not have occurred as described by Plaintiff. Debtor asserts that if a

backhoe, or even just the front bucket of the backhoe, had been intentionally dropped on Plaintiff, Plaintiff would, at best, have been crushed or rendered paralyzed. As Plaintiff continued to work the day of the incident and declined offers to go see a company doctor, Debtor asserts that the Plaintiff was not seriously injured on the job. Debtor also stated that he was not aware of any name-calling on job sites and that he would not have tolerated such name-calling if he had known.

After determining that Fayette Sand was an employer within the meaning of Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission ("EEOC") investigated the claims of Plaintiff and found that:

> Evidence obtained during the investigation supports [Plaintiff's] allegation of a hostile work environment. Evidence indicates [Plaintiff] told the [Debtor] about the offensive language used by the supervisors, but [Debtor] did nothing. Evidence indicates [Plaintiff] did not feel he had a right to object or complain about the racial jokes and horseplaying because it involved the participation of supervisors and he had already complained to management. Evidence indicates [Plaintiff], his co-workers, and the crew as a whole made a typical day of horse playing, and making racial jokes, including using the word "Nigger". Evidence indicates [Debtor] permitted inappropriate conduct which created and fostered a racially hostile environment. Evidence does not indicate [Plaintiff's] behavior was offensive to anyone. Evidence does not support [Plaintiff's] allegation of retaliatory discharge."

(Plaintiff's Exhibit 4). After an unsuccessful attempt at a settlement, the EEOC issued a Notice of Suit Rights. (Plaintiff's Exhibit 5). In such Notice, the EEOC stated that it would not bring suit and further stated that Plaintiff must file a lawsuit within 90 days of the receipt of the Notice or his right to sue based upon his charges would be lost. Plaintiff filed suit against Fayette Sand, Debtor, Jerome Taylor, and James Crowell in the United States District Court for the Northern District of Alabama on September 20, 2005. The complaint filed in the District Court tracks the Charge of Discrimination filed with the EEOC and no alleged incidents are set forth in the District Court complaint that are not also set forth in the Charge of Discrimination. On August 10, 2006, Debtor

4

filed a voluntary Chapter 7 petition.[3]  On August 21, 2006, the Debtor and Fayette Sand filed a Suggestion of Bankruptcy with the District Court.[4]  On August 22, 2006, the District Court dismissed the causes of action against Debtor and Fayette Sand without prejudice.  (Plaintiff's Exhibit 11).  On November 13, 2006, Plaintiff commenced this adversary proceeding by filing the complaint currently before the court.  (AP Doc. 1).  In the complaint, Plaintiff alleged that the Debtor "intentionally and maliciously created a hostile and racially discriminatory environment by fostering, encouraging, creating the environment for and ratifying racial discrimination during the time the Plaintiff was employed at the [Debtor's] place of business.  Specifically, the [Debtor] allowed nooses to be made and left on the work premises, allowed nooses to be used in the Plaintiff's presence as a symbol for hanging and lynchings, refused to investigate or punish employees for using racial slurs or engaging in racially discriminatory conduct and ultimately firing the [Plaintiff] for complaining about the same..." (AP Doc. 1, ¶ 6).  Plaintiff further alleged that such hostile and racially discriminatory environment created by the Debtor constitutes a violation of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a) et. seq., the Civil Rights Act of 1871, 1866, and 1964, and the laws against retaliatory discharge. The complaint incorporated the District Court complaint and no alleged incidents were set forth in the complaint that were not also set forth in the District Court complaint and the Charge of Discrimination.

        The trial on the complaint was held on April 13, 2009.  Debtor was not available at trial due

---

[3]The Chapter 7 trustee filed his Final Report and Account on March 3, 2009 wherein he indicated that there would no distribution to unsecured creditors in this case.  (Bk. Doc. 99).  All of the money that came into the estate as a result of the liquidation of Debtor's assets was distributed to priority creditors in this case.

[4] Fayette Sand did not file bankruptcy.

5

to a serious illness, but several employees of Fayette Sand were available: Wesley Warren, a co-employee of Plaintiff's; James Crowell, Plaintiff's supervisor at Fayette Sand; and Beverly Neighbors, a former employee and office manager at Fayette Sand. Wesley Warren testified that he considered Plaintiff a friend: that he and the Plaintiff joked with each other, that they occasionally worked on the same sites, that they occasionally ate lunch together, that he had been to Plaintiff's house, and that he had given Plaintiff numerous rides to work. Warren further testified that he never heard Plaintiff complain about a racially discriminatory environment until the EEOC investigator came to Fayette Sand. He did admit to calling Plaintiff a "sorry black ass," but said that he would only call Plaintiff that after Plaintiff called him a "sorry white ass." Warren also admitted to "talking smack" with Plaintiff, but said that Plaintiff would always laugh and insult Warren right back. Warren thought it was just normal horsing around. James Crowell, Plaintiff's supervisor at Fayette Sand, also testified that he thought of Plaintiff as a friend: that he and Plaintiff joked with each other, that he had given Plaintiff numerous rides to and from work, that he had given Plaintiff materials to fix his house when it was damaged in a storm, and that he had given Plaintiff money when Plaintiff's son passed away. Plaintiff admitted that Crowell gave him money when his son passed away, but denied everything else. Crowell further testified that he never heard Plaintiff complain about a racially discriminatory environment at Fayette Sand. Crowell admitted that he had called Plaintiff a "nigger," but testified that Plaintiff would call him a "honky mother-fucker." In addition, Crowell testified that Plaintiff called three Mexican workers Puerto Ricans which offended the Mexican workers. Plaintiff denied that he ever did this, saying that his ex-wife was Mexican and that he would never say anything like that.

During the course of the trial, Plaintiff testified as to all of the events he considered racially

6

discriminatory. The first event described by the Plaintiff involves supervisor James Crowell and his continued use of the nickname "Charlie." Plaintiff testified that he told Crowell numerous times that he did not answer to Charlie, but that he would respond to Ed or Charles. Crowell continued to call him Charlie. When Plaintiff refused to answer to Charlie, Crowell would call him a nigger. Plaintiff testified that he was offended by the continual use of the nickname Charlie and by the use of the word nigger. Plaintiff further testified that he was offended when Crowell would whistle or hoot to get Plaintiff's attention on job sites because it made Plaintiff feel as if Crowell didn't think he was human. Plaintiff did not allege any of these incidents in his Charge of Discrimination filed with the EEOC. Plaintiff did not allege any of these incidents in his District Court complaint.

The second event described by Plaintiff involves supervisor Jerome Taylor, and it occurred at a company crawfish boil. Plaintiff testified that Taylor called him over, pulled a small hangman's noose out of his pocket, and told Plaintiff that they were going to hang Plaintiff with the noose. Plaintiff testified that everyone got quiet when Taylor said this and that Plaintiff just walked away without touching the noose. Plaintiff further testified that Debtor was present during this incident, but that Debtor did not say or do anything about the incident. Plaintiff described this incident similarly in both his Charge of Discrimination and his District Court complaint. Crowell testified that he was not present during this incident and that he first read about it in the EEOC report. Wesley Warren testified that Plaintiff and Taylor were "talking smack" with each other and that everyone, including Plaintiff, was laughing.

The third event described by Plaintiff also involves supervisor Jerome Taylor. Plaintiff testified that supervisor Taylor intentionally caused a backhoe to hit Plaintiff in the back which resulted in injuries to Plaintiff. Plaintiff described this incident similarly in both his Charge of

7

Discrimination and his District Court complaint.

The fourth event described by Plaintiff also involves supervisor James Taylor. Plaintiff testified that he was eating lunch on a water-line job when supervisor Taylor called Plaintiff over. Taylor then pointed to an oak tree and said that they could hang Plaintiff and no one would know the difference. Plaintiff remembered telling Debtor about this incident. Plaintiff did not allege this incident in his Charge of Discrimination filed with the EEOC. Plaintiff did not allege this incident in his District Court complaint.

The last events described by the Plaintiff are the only ones in which Debtor is alleged to have actively participated. The first event described by the Plaintiff occurred while he was working at a house with water in the basement. Plaintiff testified that Debtor saw blackbird feathers, called the Plaintiff over to him, and then told Plaintiff that some of his family members had died there. Plaintiff also testified that Debtor, on two or three separate occasions, asked Plaintiff if he was going to order black-eyed peas for lunch. Plaintiff did not allege either of these incidents in his Charge of Discrimination filed with the EEOC. Plaintiff did not allege either of these incidents in his District Court complaint.

Finally, Plaintiff testified that on three separate occasions he tried to tell Debtor about the racially discriminatory incidents, but that Debtor refused to listen to him. In Debtor's response to the EEOC complaint, he denies that Plaintiff ever came to talk to him. Plaintiff further testified that he never engaged in any horseplaying and that he never made any racial jokes or comments at work because such comments have always offended him, especially if told by a white person.

## CONCLUSIONS OF LAW

Plaintiff filed this adversary proceeding to determine that certain claims he has against

8

Fayette Sand and the Debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Plaintiff asserts that the money judgments he is entitled to as a result of the claims he has brought against Debtor and Fayette Sand pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a) et. seq., the Civil Rights Act of 1871, 1866, and 1964, and the laws against retaliatory discharge are nondischargeable because such judgments constitute debts for a willful and malicious injury.

The court will first determine whether it has subject matter jurisdiction over the claims asserted against Fayette Sand. This court does not have subject matter jurisdiction over the cause of action brought against Fayette Sand pursuant to § 523(a)(6). Fayette Sand has not filed bankruptcy and is not a debtor in this or any other case. Therefore, there is no basis for determining whether a debt owed to Plaintiff by Fayette Sand is dischargeable. The court will now address the other causes of action brought against Fayette Sand. The statute that governs the jurisdiction of bankruptcy courts is 28 U.S.C. § 1334. Section 1334 provides that district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b).[5] A civil proceeding that "arises under title 11" is one that is created by or determined by a statutory provision of title 11. St. Vincent's Hosp. v. Norrell (In re Norrell), 198 B.R. 987, 992 (Bankr.N.D.Ala. 1996). The complaint alleges that Fayette Sand is liable to the Plaintiff because it "created a hostile and racially discriminatory environment by fostering, encouraging, creating the environment for and ratifying racial discrimination during the time the plaintiff was employed at the defendants' place of business." The complaint further alleges that such hostile and racially discriminatory environment constitutes a violation of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a) et. seq., the Civil Rights Act of 1871, 1866, and 1964, and

_____

[5]28 U.S.C. § 157 permits the automatic reference of this proceeding by the district court to this court.

the laws against retaliatory discharge and that Fayette Sand's liability to the Plaintiff on these claims is nondischargeable under § 523(a)(6). The underlying claims are governed by federal civil rights law; therefore, the claims do not involve causes of action that are created by or determined by title 11. A civil proceeding that "aris[es] in" a title 11 case is one that would not exist outside of bankruptcy. Id. As stated above, the underlying basis for liability to Plaintiff alleged in the complaint are governed by federal civil rights law; as such they certainly exist outside of bankruptcy.

 Fayette Sand has not filed bankruptcy and is not a debtor in this case and therefore there is no basis for determining any liabilities it may have are nondischargeable in a bankruptcy case. Therefore, the only relevant category in this adversary  proceeding is the "related to" category. A proceeding "related to" a case under title 11 has been described as "the minimum for bankruptcy jurisdiction." Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F. 3d 1340, 1345 (11th Cir. 1999) (citation omitted). The Eleventh Circuit Court of Appeals has adopted the following liberal test for determining whether a bankruptcy court has "related to"  jurisdiction:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F. 2d 784, 788 (11th Cir. 1990) (quoting Pacor, Inc. v. Higgins, 743 F. 2d 984 (3d Cir. 1984)).  "The key word in the Lemco Gypsum/Pacor test is 'conceivable,' which makes the jurisdictional grant extremely broad."  In re Toledo, 170 F. 3d at 1345 (citation omitted).  Although the test for whether a bankruptcy court has related to

10

jurisdiction over a cause of action is extremely broad, there is a limit and this action filed against Fayette Sand has reached it. In the causes of action brought against Fayette Sand, Plaintiff seeks a judgment determining that Fayette Sand is liable to the Plaintiff for violations of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a) et. seq., the Civil Rights Act of 1871, 1866, and 1964, and the laws against retaliatory discharge. The court's resolution of these causes of action brought against Fayette Sand would have no conceivable effect upon the administration of Debtor's bankruptcy estate because the shares of Fayette Sand owned by the Debtor comprise the entirety of the estate's interest in Fayette Sand, and such shares have no value to the estate.[6] Therefore, a determination that Fayette Sand is liable to the Plaintiff would have no conceivable affect on the Debtor's bankruptcy estate, and this court does not have subject matter jurisdiction over the causes of action against Fayette Sand. The causes of action brought against Fayette Sand will be dismissed without prejudice to the Plaintiff filing such causes of action in a court of competent jurisdiction.

Because the causes of action brought against Fayette Sand by the Plaintiff will be dismissed, the court is left with the causes of action brought against Debtor in which Plaintiff seeks a money judgment for violations of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a) et. seq., the Civil Rights Act of 1871, 1866, and 1964, and the laws against retaliatory discharge.

_____

[6] After investigation into the assets and financial affairs of the Debtor, the trustee in this case found that the shares of Fayette Sand have a value of $0.00. (Bk. Doc. 99). Because the trustee found that the shares of Fayette Sand owned by the Debtor were of "no value to the estate," the trustee requested permission from the court to abandon the shares pursuant to 11 U.S.C. § 554(a). Section 554(a) provides: "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). No one objected to the trustee's valuation of the shares and no one objected to the trustee's attempt to abandon the shares. As such, the trustee's assessment of the value of the shares was accepted by the court and the trustee's request to abandon the shares was granted. Because Plaintiff submitted no evidence to this court that the trustee's assessment was incorrect and that the shares of Fayette Sand do indeed have value to the estate, the court will not revisit the trustee's assessment.

11

The court will first address the cause of action brought pursuant to 42 U.S.C. § 1981. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

11 U.S.C. § 1981(a). Plaintiff's complaint asserts that he was subjected to a hostile work environment in violation of 42 U.S.C. § 1981.[7] It should first be noted that "an at-will employment agreement . . . constitutes a 'contract' within the meaning of 42 U.S.C. § 1981." Whidbee v. Garzarelli Food Specialties, Inc., 223 F. 3d 62, 68 (2d Cir. 2000). Therefore, the Plaintiff can maintain his claims under 42 U.S.C. § 1981. The court must now address whether Debtor can be held personally liable for a hostile work environment at Fayette Sand. As laid out below, Debtor was not the Plaintiff's employer; however, this does not mean that Debtor cannot be held liable for the presence of a hostile work environment. Debtor was a supervisor at Fayette Sand with the power to discipline employees, hire employees, and fire employees. Therefore, the answer to the question of whether Debtor can be held liable for the alleged violations of 42 U.S.C. § 1981 that occurred at Fayette Sand depends on the answer to the question of whether a supervisor may be held liable for discriminatory actions that the supervisor did not take part in.[8] "To establish a claim for individual

---

[7]It should be noted that discrimination claims, including hostile work environment claims brought under Title VII or 42 U.S.C. § 1981, "are subject to the same standards of proof and employ the same analytical framework." Bryant v. CEO DeKalb Co. Jones, 575 F. 3d 1281, 1296 n. 20 (11th Cir. 2009).

[8]This court is not convinced that Debtor participated in any of the discriminatory actions. Plaintiff alleges that Debtor was involved in a few of the activities, but these allegations were not contained in Plaintiff's EEOC Complaint or in Plaintiff's District Court Complaint. As such, the court has its doubts about these occurrences and finds that the Debtor did not actively participate.

Case 06-70042-CMS    Doc 79    Filed 01/05/10    Entered 01/05/10 14:49:18    Desc Main
Document    Page 12 of 27

liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action'" and the claim must be "'predicated on the actor's personal involvement.'" <u>Wallace v. DM Customs, Inc.</u>, No. 8:04-cv-115-T-23TBM, 2006 WL 2882715, at *7 (M.D. Fla. Oct. 6, 2006) (quoting <u>Allen v. Denver Pub. Sch. Bd.</u>, 928 F. 2d 978, 983 (10th Cir. 1991)). "Personal involvement may be satisfied by proof that the individual had knowledge of the alleged acts of discrimination and failed to remedy or prevent them." <u>Id.</u> Fayette Sand is a small company over which Debtor appears to have maintained complete control. This court finds it unbelievable that he would not have known about the alleged discriminatory incidents. In addition, the evidence shows that Debtor was present at the company crawfish boil where the most egregious incident[9] took place. Therefore, this court finds that Plaintiff knew of the alleged acts of discrimination and also that the Debtor failed to remedy or prevent them. As such, this court finds that the Debtor is personally liable for any damages associated with the Plaintiff's hostile work environment cause of action brought pursuant to 42 U.S.C. § 1981.

To establish a hostile work environment, Plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002). Plaintiff has shown that he is a member of a protected group. Plaintiff has also shown that he was subject to unwelcome harassment while he

---

[9]The court is referring to the noose incident.

13

worked at Fayette Sand and that the unwelcome harassment was based upon his race, a protected characteristic. The Plaintiff must also show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. There is both an objective and a subjective element to the requirement that harassment be sufficiently severe or pervasive to alter the terms and conditions of employment. Id. at 1276 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). Therefore, in order to be actionable, the harassment "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)). There is no doubt in this court's mind that a reasonable person would find the harassment Plaintiff was subjected to both hostile and abusive. Plaintiff was subjected to an environment were a typical day included horseplaying and the making of racial jokes, including persistent use of the racial epithet "nigger," by both co-employees and supervisors. Despite knowing that employees and supervisors were subjecting Plaintiff to racial epithets, the Debtor did nothing to stop it.[10] In addition to the persistent use of the racial epithet "nigger," the Plaintiff was also taunted with the presence of a noose, a symbol of lynching, in the workplace. A co-employee of the Debtor fashioned the noose out of rope that was laying around Fayette Sand.[11] After the noose was fashioned, it was hung inside an ornamental concrete building right beside the back entrance. After the noose had been hanging in the building for 10-12 months, a supervisor took the noose out during

---

[10] Plaintiff testified Debtor was aware of the racial jokes/epithets. Debtor, in his response to the EEOC complaint, denied he knew of them. The court finds the Debtor was aware of the boisterous conduct including joking and radial epithets going on at his business and work sites.

[11]Debtor seemed to think it was important that another African-American employee had made the noose and that this somehow made the presence of the noose less offensive. This court does not agree.

14

a crawfish boil and presented it to the Plaintiff, asking if the Plaintiff knew what the noose represented. The evidence indicates that Debtor was present at the crawfish boil during the noose incident. The evidence also indicates that Debtor took no corrective action despite this knowledge. This court finds that any reasonable person would find this atmosphere hostile and abusive.

Plaintiff must also prove that he subjectively perceived the environment to be hostile and abusive. First, this court is not inclined to believe that Plaintiff was offended by those events testified to at trial, but not detailed in the EEOC complaint or the District Court complaint. If the Plaintiff had been offended, those events would have been disclosed earlier. This leaves the court to consider whether Plaintiff subjectively perceived the persistent use of the racial epithet "nigger" and the noose incident as hostile and abusive. "[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forkley Systems, Inc.</u>, 510 U.S. 17, 23 (1993). Given the pervasive use of racial epithets and the noose incident the court cannot see how the Plaintiff could have seen his environment other than hostile and abusive. The Plaintiff is an older black man in his 60s. He grew up in a small town in the rural south. He grew up in a time where there were white-only restaurants, white-only buses, white-only schools, and white-only jobs. People in Plaintiff's position, a day-laborer with little education who performs unskilled labor, have very little power in a typical workplace, as they can be easily replaced. People in Plaintiff's position who grew up in a time of segregation have even less power as they are less inclined to take action, having grown up in a time when African-Americans had little power anywhere in the United States. In addition, this court would like to point out that

15

Plaintiff grew up in a time where lynchings occurred and a noose would have much more significance to him than to another man who grew up in the late 20th century after great strides had been made in the civil rights movement. In short, Plaintiff was placed in a situation where he was subjected to daily use of racial epithets and was also threatened with a noose by a person with authority over him during a work crawfish boil. Plaintiff, as a 60 year old black man used to hearing the word "nigger" in a derogatory manner, did not perceive the repeated use of the word at the workplace as teasing and horseplay; to the Plaintiff, the racial epithets and the noose were both a symbol of racial hatred . Plaintiff's testimony that he was embarrassed, humiliated and offended by this conduct is completely believable and understandable. The court finds that the frequency of the use of the racial epithets coupled with the severity of the noose incident created a situation that Plaintiff subjectively perceived to be hostile and abusive.

In addition to showing that the environment was hostile and abusive, the Plaintiff must also show that environment was so pervasive that it affected the terms and conditions of his employment. Although the Plaintiff did not testify that the environment caused him to lose a promotion or receive a pay cut, did not testify that the environment caused him to quit, did not testify that the environment caused him to be ostracized by his co-employees, and did not testify that the environment at Fayette Sand affected his personal life by causing a lack of sleep, a general feeling of depression, a dread of going to work, or a general feeling of sickness, such evidence is not required for a finding of a hostile work environment. The Plaintiff does not have to prove that the environment is so hostile and abusive that is causes tangible effects upon the work environment, such as nervous breakdowns, detraction from job performance, or discourage an employee from remaining on the job. Harris, 510 U.S. at 22. Even without these tangible effects, "the very fact that the discriminatory conduct was

16

so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends . . . . workplace equality." Id. The continuous use of racial epithets and the noose incident in this case go beyond anything that could be characterized as horseplay or friendly teasing. The court finds that this hostile and abusive environment was sufficiently severe and pervasive to alter the terms and conditions of employment within the meaning of 42 U.S.C. § 1981.

Having found that the Plaintiff has proven all elements of a hostile work environment claim pursuant to 42 U.S.C. § 1981, this Plaintiff is entitled to damages as a result of Debtor's conduct. However, because this courts finds that the debt owed to Plaintiff is dischargeable and because the Debtor filed a Chapter 7 case where there will be no dividend to unsecured creditors, this court will not determine the amount of the damages sustained by the Plaintiff. Instead, the court will enter a declaratory judgment finding that the Debtor violated 42 U.S.C. § 1981 by allowing a hostile work environment to be in existence at Fayette Sand.

The court will next address the cause of action brought pursuant to 42 U.S.C. § 1982. 42 U.S.C. § 1982 is entitled "Property rights of citizens" and provides that all citizens of the United States have the same right to "inherit, purchase, lease, sell, hold, and convey real and personal property." Plaintiff did not allege in his complaint or assert at trial that the conduct of the Debtor affected any right Plaintiff had to real or personal property nor did the Plaintiff submit any evidence at trial that would support such an assertion. In addition, Plaintiff did not address § 1982 in his Post-Trial Memorandum Brief. Therefore, this court finds that the request for a money judgment for Debtor's violation of 42 U.S.C. § 1982 is due to be denied.

The court will next address the cause of action brought pursuant to 42 U.S.C. § 2000(a) et.

17

seq..  The court believes that Plaintiff meant to assert a cause of action pursuant to 42 U.S.C. § 2000e

et. seq. because: 42 U.S.C. § 2000(a) does not exist; 42 U.S.C. § 2000a deals with the prohibition

of discrimination or segregation in places of public accommodation which is not applicable in this

case; and the evidence submitted at trial indicates that Plaintiff meant to assert a cause of action

pursuant to 42 U.S.C. § 2000e et. seq..  Therefore, this court will address 42 U.S.C. § 2000e et. seq.

and deny Plaintiff's request for a money judgment for Debtor's violation of 42 U.S.C. § 2000(a.).

Under 42 U.S.C. § 2000e et. seq. ("Title VII") it is unlawful "for an *employer* to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race …."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  Title VII further provides that

the "term 'employer' means a person engaged in an industry affecting commerce who has fifteen or

more employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year, and any agent of such a person …." 42 U.S.C. § 2000e(b).  The Plaintiff

has not shown that the Debtor employed fifteen or more employees for each working day in each of

twenty or more calendar weeks in the current or preceding calendar year because the only

employment records submitted by the Plaintiff are those of Fayette Sand.  Fayette Sand was an

Alabama corporation in good standing during the time in question, and there was no evidence

presented at trial that tends to show that Debtor failed to follow legal requirements for Fayette Sand

or that Debtor failed to maintain corporate records so as to eliminate the protection of the corporate

shield and expose Debtor to personal liability.  As such, the Debtor and Fayette Sand are legally

distinct from one another and the employees of Fayette Sand are not employees of the Debtor.

Therefore, the Plaintiff must prove that the Debtor was an agent of a person that employed the

18

requisite number of employees during the specified time period in order to show that Debtor meets the definition of employer. Unfortunately for the Plaintiff, the Eleventh Circuit Court of Appeals has made it impossible for him to do so in this case. In <u>Busby v. City of Orlando</u>, the Eleventh Circuit Court of Appeals found that "relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act" and further found that the "proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." 931 F.2d 764, 772 (11th Cir. 1991). Although not stated explicitly, these statements show that the Eleventh Circuit Court of Appeals is unwilling to find that an employee, even a supervisory employee, constitutes an agent of the employer for purposes of Title VII: It is the actual employer who must be sued. As shown by the employment records submitted by Plaintiff, Fayette Sand was the employer of Plaintiff at the time the alleged discriminatory acts occurred. Therefore, Plaintiff must sue Fayette Sand under Title VII, not Debtor. However, as discussed in detail above, this court does not have subject matter jurisdiction over the Title VII cause of action brought against Fayette Sand. Because there is no evidence that the Debtor employed the requisite number of employees and the decisions of the Eleventh Circuit Court of Appeals preclude the Plaintiff from arguing that the Debtor constitutes an agent for purposes of Title VII, the Plaintiff has failed to show that Title VII is applicable in this case. Therefore, this court finds that the Debtor's alleged discriminatory actions did not violate 42 U.S.C. § 2000e et. seq. and denies Plaintiff's request for a money judgment for violations of 42 U.S.C. § 2000e et. seq.

The court will next address the cause of action brought pursuant to the Civil Rights Act of 1871. The Civil Rights Act of 1871 is codified at 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42

Case 06-70042-CMS    Doc 79    Filed 01/05/10    Entered 01/05/10 14:49:18    Desc Main
Document    Page 19 of 27

U.S.C. § 1986.[12]

Section 1983 is entitled "Civil action for deprivation of rights" and provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfg. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)).  Therefore, the Plaintiff must show that any discriminatory actions engaged in by Debtor constitute state action in order to prove that Debtor violated 42 U.S.C. § 1983.  Plaintiff did not assert in his complaint or assert at trial that the alleged discriminatory actions engaged in by the Debtor constituted state action nor did the Plaintiff submit any evidence at trial that would support such an assertion.  In addition, Plaintiff did not address § 1983 in his Post-Trial Memorandum Brief.  Therefore, this court finds that the request for a money

---

[12] This court is not sure what cause of action the Plaintiff meant to assert here.  The Plaintiff specified in his District Court complaint that he was only asserting a cause of action "pursuant to the Civil Rights Act of 1871 codified in 42 U.S.C.A. § 1981" and the Plaintiff incorporated the District Court complaint by reference in the complaint filed with this court. However, 42 U.S.C. § 1981 was not codified as a result of the Civil Rights Act of 1871; it was codified as a result of the Civil Rights Act of 1991. The court will address all of causes of action contained in the Civil Rights Act of 1871.

20

judgment for Debtor's violation of 42 U.S.C. § 1983 is due to be denied.

42 U.S.C. § 1985 is entitled "Conspiracy to interfere with civil rights" and provides for a cause of action when two or more persons conspire to interfere with civil rights. Plaintiff did not assert in his complaint or assert at trial that the Debtor conspired with one or more other persons to interfere with Plaintiff's civil rights nor did the Plaintiff submit any evidence at trial that would support such an assertion. In addition, Plaintiff did not address § 1985 in his Post-Trial Memorandum Brief. Therefore, this court finds that the request for a money judgment for Debtor's violation of 42 U.S.C. § 1985 is due to be denied.

42 U.S.C. § 1986 is entitled "Action for neglect to prevent conspiracy" and provides for a cause of action against every person who, with knowledge of any wrongs conspired to be done in violation of 42 U.S.C. § 1985 and with the power to prevent such wrongs from being committed, fails to prevent the commission of such wrongs. Plaintiff did not allege in his complaint or assert at trial that the conduct of Debtor failed to prevent conspired wrongs from being committed nor did the Plaintiff submit any evidence at trial that would support such an assertion. In addition, Plaintiff did not address § 1986 in his Post-Trial Memorandum Brief. Therefore, this court finds that the request for a money judgment for Debtor's violation of 42 U.S.C. § 1986 is due to be denied.

The court will next address the causes of action brought pursuant to the Civil Rights Act of 1866. The Civil Rights Act of 1866 is codified at 42 U.S.C. § 1982,[13] 42 U.S.C. § 1988, 42 U.S.C. § 1987, 42 U.S.C. § 1991, 42 U.S.C. § 1992.[14]

---

[13]The court addressed 42 U.S.C. § 1982 above.

[14] This court is fairly sure that the Plaintiff only meant to assert a cause of action pursuant to 42 U.S.C. § 1982 because the Plaintiff specified in his District Court complaint that he was only asserting a cause of action pursuant to "the Civil Rights Act of 1866 codified in 42 U.S.C.A. § 1982" and the Plaintiff incorporated the District Court complaint by reference in the complaint

42 U.S.C. § 1988 is entitled "Proceedings in vindication of civil rights" and grants the court discretion to award attorney fees to the prevailing party in any action to enforce "sections 1981, 1981a, 1982, 1983, 1985, and 1986" of Title 42. Plaintiff did not assert in his complaint or assert at trial that the he was entitled to receive attorney's fees nor did the Plaintiff submit any evidence at trial that would support such an entitlement. In addition, Plaintiff did not address § 1988 in his Post-Trial Memorandum Brief. Therefore, this court finds that the request for a money judgment pursuant to 42 U.S.C. § 1988 is due to be denied.

42 U.S.C. § 1987 is entitled "Prosecution of violation of certain laws" and provides that certain categories of people not applicable in this case are required to prosecute certain violations of law not applicable in this case. Because § 1987 is not applicable to this case and because Plaintiff did not address § 1987 in his Post-Trial Memorandum Brief, this court finds that the request for a money judgment for Debtor's violation of 42 U.S.C. § 1987 is due to be denied.

42 U.S.C. § 1991 is entitled "Fees; persons appointed to execute process" and provides that "[e]very person appointed to execute process under section 1989 of [title 42] shall be entitled to a fee of $5 for each party he may arrest . . . with such other fees as may be reasonable . . . . ." Plaintiff is not a "person appointed to execute process" and Plaintiff did not address § 1991 in his Post-Trial Memorandum Brief. Therefore, this court finds that the request for a money judgment for Debtor's violation of 42 U.S.C. § 1991 is due to be denied.

42 U.S.C. § 1992 is entitled "Speedy trial" and provides for a speedy trial for violations of 42 U.S.C. § 1990, a statute not applicable in this case. Therefore, this court finds that the request

filed with this court. However, because the Plaintiff did not include this above-quoted language in the complaint filed in this court and for the sake of completeness, this court will address the other causes of action codified in the Civil Rights Act of 1866.

for a money judgment for Debtor's violation of 42 U.S.C. § 1992 is due to be denied.

The court will next address the causes of action brought pursuant to the Civil Rights Act of 1964. The Civil Rights Act of 1964 is codified at 42 U.S.C. § 2000a-2000h.[15] As noted above, the only cause of action under the Civil Rights Act of 1964 that is applicable in this case is 42 U.S.C. § 2000e et. seq.[16] Therefore, this court finds that the request for a money judgment for Debtor's violation of § 2000a, 42 U.S.C. § 2000b, 42 U.S.C. § 2000c, 42 U.S.C. § 2000d, 42 U.S.C. § 2000f, 42 U.S.C. § 2000g, and 42 U.S.C. § 2000h is denied.

The court will next address the causes of action brought pursuant to the laws against retaliatory discharge. Plaintiff alleges that he was discharged from his employment because he filed a workman's compensation claim and/or because he filed an EEOC complaint. The evidence does not support Plaintiff's allegation that he was discharged because he filed a worker's compensation claim. The Employer Response to the Notice of Claim and Request for Separation Information sent by the Unemployment Compensation Agency of Alabama indicates that Plaintiff was terminated due to a "lack of work" and because "business [was] slow." In addition, Beverly Neighbors, an office manager for Fayette Sand, testified that Plaintiff was terminated for not returning to work after being released from doctors. Further, Plaintiff admitted that he failed to use the company doctor after his injury and failed to have his prescription filled at the company pharmacy. There was no evidence

---

[15] This court is fairly sure that the Plaintiff only meant to assert a cause of action pursuant to 42 U.S.C. § 2000e because the Plaintiff specified in his District Court complaint that he was only asserting a cause of action pursuant to "the Civil Rights Act of 1964 codified in 42 U.S.C.A. § 2000(a) et. seq." and the Plaintiff incorporated the District Court complaint by reference in the complaint filed with this court. However, because the Plaintiff did not include this above-quoted language in the complaint filed in this court and for the sake of completeness, this court will address the other causes of action codified in the Civil Rights Act of 1964.

[16] The court addressed 42 U.S.C. § 2000e et. seq. above.

23

that Plaintiff was terminated because of his injuries or because he filed a workman's compensation claim.  In fact, the evidence showed that Plaintiff was paid for his time off from work and his medical and prescription bills were paid by Fayette Sand.

The evidence does not support Plaintiff's allegation that he was discharged because he filed an EEOC complaint.  The evidence indicates that Debtor's last day of employment was February 20, 2004.  (Plaintiff's Exhibit 15).  Plaintiff did not file his Charge of Discrimination with the EEOC until April 28, 2004, two months after his separation from Fayette Sand.  (Plaintiff's Exhibit 1). Therefore, there is no basis for the assertion that he was discharged because he filed the Charge of Discrimination with the EEOC: He had already been discharged when he filed the complaint. Therefore, this court finds that the Debtor's alleged retaliatory discharge did not occur and denies Plaintiff's request for a money judgment for violations of the laws against retaliatory discharge.

Finally, the court will address the main component of this complaint: the allegation that the debt owed to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Section 523(a)(6) provides that: "A discharge under section 727 . . . . of this title does not discharge an individual debtor from any debt . . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Section 523(a)(6) contains two requirements that must be met before a debt is excepted from discharge: the debt must be one for an injury that was (1) willful and (2) malicious.  In re Scarborough, 171 F. 3d 638, 641 (8th Cir. 1999).  The court will first examine whether the injury was willful.  It is well established that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate and intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original).  Therefore, only acts committed with the "actual intent to cause injury" are willful.  See id. The testimony and evidence

24

submitted at trial established that the Debtor allowed the Plaintiff to be subjected to a hostile work environment while Plaintiff was employed at Fayette Sand in violation of 42 U.S.C. § 1981. However, this allowance does not establish that the Debtor intended to injure the Plaintiff: Intent to cause injury is not a necessary element of a hostile work environment cause of action brought pursuant to 42 U.S.C. § 1981. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (citations omitted). See also Sanger v. Busch (In re Busch), 311 B.R. 657, 669 (Bankr. N.D.N.Y. 2004) (holding that a finding of sexual harassment was not a per se finding of a willful and malicious injury). As such, the fact that Debtor allowed a hostile work environment to exist, while certainly deplorable, does not mean that the Debtor intended the Plaintiff harm. To show that the Debtor intended him harm, the Plaintiff must show, at a minimum, that the injury he sustained was desired and/or anticipated by the Debtor. Geiger, 523 U.S. 57 at 62. After a thorough review of the actions of the Debtor, this court finds that the Plaintiff failed to prove that the Debtor either desired the Plaintiff's injury or anticipated that the Plaintiff would be injured: There is no evidence that the Debtor actively participated in any of the racially-charged incidents that occurred at Fayette Sand and there is no evidence that the Debtor bore the Plaintiff any ill-will. As a result, this court finds that the evidence failed to show the Debtor intended to injure the Plaintiff when the Debtor allowed the hostile work environment to continue at Fayette Sand. In re Busch, 311 B.R. at 669-70. This court further finds that the allowance of the continuation of the hostile work environment in this case does not constitute a willful and malicious injury within the meaning of § 523(a)(6) and that the debt owed to Plaintiff as a result of the awarded judgment for violation of 42 U.S.C. § 1981 is dischargeable. Therefore, the Plaintiff's Objection to Discharge is due to be overruled.

**CONCLUSION**

The court does not have subject matter jurisdiction over the causes of action brought against Fayette Sand and such causes of action will be dismissed without prejudice.

The Plaintiff has shown that he was subjected to a hostile work environment at Fayette Sand in violation of 42 U.S.C. § 1981. As a result, Plaintiff is entitled to a declaratory judgment so finding. However, because the Plaintiff failed to show that the Debtor intended to cause the Plaintiff harm when the Debtor allowed the hostile work environment to continue, the Plaintiff failed to show a willful and malicious injury as required by 11 U.S.C. § 523(a)(6). Therefore, the Plaintiff's Objection to Dischargeability is hereby overruled as to the causes of action brought pursuant to 42 U.S.C. § 1981.

The Plaintiff failed to show that the Debtor met the statutory definition of employer contained in 42 U.S.C. § 2000e(b). As such, the Debtor's alleged discriminatory actions did not violate 42 U.S.C. § 2000e et. seq. and Plaintiff is not entitled to a money judgment for violations of 42 U.S.C. § 2000e et. seq. As there is no debt to be declared nondischargeable, the Plaintiff's Objection to Dischargeability is overruled as to the causes of action brought pursuant to 42 U.S.C. § 2000e et. seq.

Plaintiff also alleged that such hostile and racially discriminatory environment created by the Debtor constitutes a violation of the Civil Rights Act of 1871, 1866, and 1964. After careful research, this court has concluded that the relevant portions of the Civil Rights Acts have been codified in 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et. seq., and that no relevant cause of action exists in the Civil Rights Acts that is not provided for by 42 U.S.C. § 1981or and 42 U.S.C. § 2000e et. seq. Therefore, this court will dismiss all causes of action provided for in the Civil Rights Act of 1871, 1866, and 1964 that are not codified at 42 U.S.C. § 1981 or 42 U.S.C. § 2000e et. seq.

The Plaintiff failed to show that his being fired was in retaliation for the filing of the EEOC

26

Complaint. As such, the Debtor's alleged actions did not constitute a retaliatory discharge and Plaintiff is not entitled to a money judgment for violations of the laws against retaliatory discharge. As there is no debt to be declared nondischargeable, the Plaintiff's Objection to Dischargeability is overruled as to the causes of action brought pursuant to retaliatory discharge.

An Order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this January 5, 2010.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

27